**GENERAL MOTORS CORPORATION, CHEVROLET MOTOR DIVISION, Defendant–Appellant,**

v.

**AETNA CASUALTY & SURETY CO., Plaintiff–Appellee.**

No. 25A03–8907–CV–317.

Court of Appeals of Indiana, Third District.

Sept. 11, 1990.

Don G. Blackmond, South Bend, for defendant-appellant.

Timothy J. Walsh, Edward N. Kalamaros & Assoc. Professional Corp., South Bend, for plaintiff-appellee.

GARRARD, Judge.

General Motors Corporation (GMC) appeals the entry of summary judgment in favor of plaintiff Aetna Casualty & Surety Co. (Aetna) following the trial court's denial of GMC's motion to withdraw admissions made by operation of law.

### FACTS

Aetna's insured, the Hartford Dental Society, Inc. (Hartford), a Connecticut corporation, contracted with Barth, Inc. for the conversion of a GMC manufactured engine and chassis into a "Smilemobile." This large van was to serve Hartford as a mobile dental office. Hartford paid Barth a $12,000 deposit and on April 19, 1985 took delivery of the van in Indiana intending to drive the vehicle back to Connecticut and thereafter forward the balance of the purchase price to Barth. However, after driving the van approximately 45 miles, the vehicle started to smoke, caught fire, and was totally destroyed.

Aetna paid Hartford the $12,000 deposit, incurred another $125 in storage fees, and then in April of 1987 brought suit against both GMC and Barth seeking recovery of those sums plus costs. GMC and Barth cross claimed against each other. GMC attempted to have the case removed to federal court.

Barth's insurer hired an expert engineering firm which concluded that the fire originated at the carburetor. Due to the fire damage, they could not determine whether the fuel line was loose at the time of the fire. Barth's experts discounted the electrical system as a cause of ignition. Thus, the opinion apparently implicated GMC's acts or omissions as the source of Hartford's loss. Conversely, Aetna's hired experts concluded that Barth's electrical work was the cause of the fire. Their reported conclusions point to the short circuiting of the battery cable against the chassis. These experts believe that the short was caused by a rubbing contact of the battery cable and frame where such contact abraded the electrical insulation and, in turn, led to the short out.

On August 29, 1988 Aetna served thirty-five requests for admissions upon GMC and Barth. GMC did not reply within 30 days, so the admissions therein requested were established as fact by operation of law pursuant to Trial Rule 36. On October 4, 1988 Aetna moved for summary judgment as against GMC based upon those admissions. On December 29, 1988, the date Aetna's summary judgment motion was set for hearing, GMC sought to withdraw three of its admissions.[1] GMC's mo-

---

1. The three admissions GMC desired to withdraw included:

Admission No. 13: That at the time said motor vehicle was conveyed by the seller to the purchaser, and at the time of the aforesaid fire, the aforesaid specialized motor home was in a defective condition, not contemplated by reasonable persons among those considered expected users of it, including Hartford Dental Society, Inc., and was unreasonably dangerous to the expected users thereof, who were using it in a reasonably expectable way.

Admission No. 27: That the defendants herein, at the times and places aforesaid, put said specialized motor home into the stream of commerce in a defective condition, unreasonably dangerous to the users thereof and to their property, namely, the specialized motor home itself, and are therefore liable for the physical harm caused by the product to the product itself as well as for any other economical or consequential damages arising therefrom since the defendant, Barth, Inc., is a seller engaged in the business of manufacturing and selling such motor vehicles and the defendant, General Motors Corporation, Chevrolet Motor Division, is a manufacturer and seller of components thereof, which said products did reach the users without substantial alteration in the condition in which they were sold by the defendants.

Admission No. 30: That as to those products and/or goods that were sold by the respective defendants, both of the defendants did, by operation of the terms and provisions of the Indiana Uniform Commercial Code, impliedly warrant to Hartford Dental Society, Inc. that the aforesaid specialized motor home and/or its components were fit for the purposes for which they

tion was denied and Aetna was granted summary judgment. That entry was subsequently deemed a final order, which serves as the basis for this appeal.

## ISSUE

GMC presents two issues. We reverse after discussing just one. Our issue is whether the trial court erred or abused its discretion in refusing to allow GMC to withdraw its admissions made by operation of law where those inadvertently or negligently made admissions go to the core controverted issues.

## DISCUSSION

Trial Rule 36(B) provides as follows:

Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Subject to the provisions of Rule 16 governing amendment of a pre-trial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits. Any admission made by a party under this rule is for the purpose of the pending action only and is not an admission by him for any other purpose nor may it be used against him in any other proceeding.

The trial court denied GMC's motion to withdraw admissions and entered summary judgment for Aetna in the same breath. It was obvious to the trial court that the three admissions GMC sought to withdraw went to vital matters. Refusing to allow withdrawal did not *"practically* eliminate any presentation of the merits," *Westmoreland v. Triumph Motorcycle Corp.* (D.Conn.1976), 71 F.R.D. 192, 193 (emphasis added), it entirely obviated the need for Aetna to present any evidence. That is, GMC's admissions, as drafted by Aetna, constituted a conclusive showing on all aspects of Aetna's claims against GMC. They are posed in terms of the ultimate legal conclusions rather than evidentiary matters. We believe this was not the intent of Trial Rule 36 and such admissions should not be permitted to stand where objected to within a reasonable time and the party requesting the admissions would not be unduly prejudiced by their withdrawal. This is so because the party requesting the admissions ordinarily cannot be said to have reasonably relied thereon; that is to say, the party requesting the admissions had no reasonable expectation that the party to whom they were addressed should admit them as being genuinely uncontroverted.

As noted in Judge Staton's recent opinion in *Gary Municipal Airport Authority District v. Peters* (1990), Ind.App., 550 N.E.2d 828, 832 (Hoffman, P.J. concurring in result; Baker, J. dissenting):

T.R. 36 is designed to expedite trial by weeding out uncontested issues, thereby baring the heart of the controversy for more efficient litigation. Conversely, it is not the intention of the rule to force speedy but untimely ends to justiciable controversies by laying procedural landmines for unsuspecting litigants.

*See also F.W. Means & Co. v. Carstens* (1981), Ind.App., 428 N.E.2d 251, 256 ("The *essential function* of a T.R. 36 request for admission is to establish a 'fact.' 3 Harvey, *Indiana Practice—Rules of Procedure Annotated,* 36.1, 1970; 4A *Moore's Federal Practice,* ¶¶ 36.01 et seq. (1981); 8 Wright & Miller, *Federal Practice and Procedure,* §§ 2251 et seq. (1970) (emphasis added)").

■ Absent demonstrable prejudice to the nonmoving party, justice requires that a trial court allow withdrawal of admissions where the admissions, made by operation of law, go to vital or core controverted

were specifically designed and/or intended, that said goods were safe and suitable to be used by plaintiff's insured in connection with the particular purpose of its business which was to provide a mobile dental office where dental servic-

es could be rendered to patients of Hartford Dental Society, Inc. and which said particular purpose the defendants were aware of on and before April 19, 1985.

issues. Judge Staton aptly quotes *Hadra v. Herman Blum Consulting Engineers* (N.D.Tex.1977), 74 F.R.D. 113, 114 for the proposition that " 'it does not further the interests of justice to automatically determine all the issues in a lawsuit and enter summary judgment against a party because a deadline was missed.' " *Peters, supra,* 550 N.E.2d at 831.

■ Aetna has not shown any prejudice here. It would have been unreasonable to rely on admissions of such central issues as found in the requests for admissions Aetna drafted. These admissions were not drafted to weed out issues. They were drafted precisely to be the procedural landmines we find offensive to the overriding purpose of the rules. The requests speak to the very core of the issues Aetna knew to be intended for litigation. *See Westmoreland, supra,* 71 F.R.D. at 193. Trial Rule 36 was not meant to be used in such a fashion.

Certainly, as Judge Hoffman noted, TR 36 "is intended, at least in part, to operate as a sanction against a party that fails to respond to a request for admissions." *Peters, supra,* 550 N.E.2d at 836 (Hoffman, P.J., concurring in result). That sanction finds principal expression in the element of prejudice to the requesting party for relying on the admission. No prejudice was shown here and considering the text of the requests we certainly cannot find that a delay of four months was per se so unconscionable that prejudice might be presumed.

Absent the admissions, Aetna's summary judgment motion could not prevail.

Accordingly, the denial of GMC's TR 36(B) motion and the entry of summary judgment are reversed and the cause remanded for further proceedings consistent herewith.

MILLER, P.J., concurs.

HOFFMAN, P.J., dissents and files separate opinion.

HOFFMAN, Presiding Judge, dissenting.

I respectfully dissent. It is within the discretion of the trial court to permit a party to withdraw an admission if the court ascertains that: (1) the presentation of the merits of the action will be subserved by allowing withdrawal of the admissions; and (2) the party who obtained the admissions failed to demonstrate that withdrawal or amendment will prejudice him in maintaining his action on the merits. Ind.Trial Rule 36(B). This Court will review the determination of the lower court only for abuse of discretion. *Stewart v. Stewart* (1987), Ind.App., 506 N.E.2d 1132, 1134.

As I stated in my concurring opinion in *Gary Mun. Airport Auth. Dist. v. Peters* (1990), Ind.App., 550 N.E.2d 828, 836:

"Because T.R. 36 defines both the discovery procedure for obtaining admissions and the sanction for failure to respond to the discovery request, the rule must be given teeth. T.R. 36(B) places the burden squarely upon the moving party to show how the withdrawal or amendment of the admissions would assist in reaching a just resolution of the action on its merits. In ruling on a motion to withdraw and/or amend admissions, the court should consider whether key controverted issues have been admitted by operation of law. Equally important is a consideration whether the moving party has abused the discovery process by its failure to respond to a request for admissions. Abuse may be manifested in the party's inordinate delay in responding without seeking extensions from the trial court, or in the party's apparent bad faith in refusing to respond."

GMC did not demonstrate in its motion to withdraw admissions that withdrawal would subserve the presentation of the merits of the action. Moreover, GMC made no attempt to respond to the request for admissions and delayed four months in filing its motion to withdraw. Accordingly, the trial court did not abuse its discretion in denying the motion to withdraw, and I would affirm the summary judgment.